**T. deVRIES, B. V., Plaintiff,**

**v.**

**WEINSTEIN INTERNATIONAL CORP.,
and Weinstein International DISC
Corporation, Defendants,**

**v.**

**WEINSTEIN INTERNATIONAL CORP.,
Third-Party Plaintiff,**

**v.**

**STERLING COLORADO BEEF CO.,
Third-Party Defendant.**

**Civ. No. 4–76–112.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 15, 1978.

**454**

Pierce Butler, George L. May, and Alan I. Silver, Doherty, Rumble & Butler, St. Paul, Minn., James S. Simonson, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Wood Foster, Jr., Thomas H. Goodman, and Richard Siegel, Grossman, Karlins, Siegel & Brill, Minneapolis, Minn., for defendants and third-party plaintiff.

Thomas E. Gebow, Holland & Hart, Denver, Colo., and Steven J. Olson and Robert R. Weinstine, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for third-party defendant.

## Order

MacLAUGHLIN, District Judge.

This matter comes before the Court on the defendants' motion to dismiss pursuant to Rule 12(b)(7) for failure to join a person needed for just adjudication under Rule 19. Oral argument was heard on defendants' motion on September 6, 1978. Based upon all the files, records, memoranda, affidavits and arguments, this Court now denies the motion to dismiss made by the defendants.[1]

This is a breach of contract action brought by plaintiff T. deVries, B.V.[2] which claims in the complaint to be an assignee of Frianco Import-Export (hereinafter Frianco), a Netherlands corporation. Plaintiff asserts in the complaint that a contract claim owned by Frianco was validly assigned to it through Frianco's principal, Fritz Doets, on November 21, 1973, in the Netherlands. The events which followed this transaction, as well as the nature of the transaction itself under the law of the Netherlands, form the basis of the defendants' motion under Rule 19.

The thrust of defendants' argument is that to proceed with this litigation in its present posture would expose them to a substantial risk of incurring multiple or inconsistent obligations within the meaning of Rule 19(a). This is so, defendants contend, because other persons or entities, either because of bankruptcy proceedings, multiple assignments, or because of Dutch law concerning the validity and nature of assignments, may have an ownership interest in the breach of contract claim now asserted by plaintiff which these absent persons could later assert against the defendants. Defendants conclude that as

1. The original defendants herein include Weinstein International Corporation and the Weinstein International DISC Corporation. The Weinstein corporations impleaded Sterling Colorado Beef Company as a third-party defendant, alleging that Sterling contracted to sell sweetbreads to Weinstein. Sterling denies the existence of any contract. Plaintiff later amended its complaint to include Sterling Colorado Beef Company as a defendant. All refer-

ences to defendants in this Order include the Weinstein corporations and Sterling Colorado Beef Company. Counsel for Weinstein has requested additional oral argument but the Court has concluded that further oral argument is unnecessary under the circumstances.

2. The term "B.V." stands for "besloten vennootschap" and signifies a closed corporation under the law of the Netherlands.

there are absent persons with an interest in the claim asserted by plaintiff, they amount to persons to be joined if feasible within the meaning of Rule 19(a) and as these persons are not subject to service of process, the action should be dismissed for equitable reasons under Rule 19(b).

In order to conceptualize the issue of whether these absent persons are persons to be joined if feasible within the meaning of Rule 19(a), the pertinent facts will be briefly recited. In June of 1972, defendants Weinstein International Corporation and Weinstein DISC Corporation (hereinafter Weinstein), domestic and international brokers of meat offals, entered into a written contract with Frianco Import-Export to sell approximately 7,000 to 8,000 pounds per month of "Sterling" brand beef sweetbreads for a one-year period to Frianco, a Netherlands corporation. This agreement provides that the Uniform Commercial Code shall govern matters relating to the construction, performance or breach of the contract. According to the plaintiff and defendant Weinstein, Weinstein and Sterling Colorado Beef Company (hereinafter Sterling) contracted with each other to buy and sell sweetbreads. The plaintiff also asserts that Fritz Doets, acting for Frianco, entered into an oral contract with Sterling to buy the frozen beef sweetbreads directly from Sterling in 1972.

In April, 1973, in the Netherlands, the plaintiff in this action, T. deVries, B.V., also a meat broker and importer-exporter, allegedly entered into a contract with Frianco to purchase 35,000 kilograms, of Sterling brand beef sweetbreads. According to the plaintiff, the sweetbreads it agreed to purchase from Frianco were never delivered,

nor were the sweetbreads delivered to Frianco by Weinstein or Sterling. Subsequently, on November 21, 1973, Frianco through its principal Fritz Doets, apparently assigned[3] its claim against Weinstein to Tekke deVries, a Dutch entrepreneur, in writing.[4] This agreement essentially provides that in the event of collection, Doets is entitled to be paid 40% of the proceeds. The defendants also assert that at the time this agreement was entered into by Doets and deVries, Doets was indebted to Tekke deVries in the amount of 50,000 guilders, and that it was not until 1974 that the debt was repaid. The written agreement purporting to "cede" or assign the contract claim in issue here is the basis for plaintiff's allegation that it owns the claim now asserted against Weinstein and Sterling. Subsequently, pursuant to the provisions of the written contract between Frianco and Weinstein, the present plaintiff filed an arbitration action in Minneapolis in 1974.[5]

During 1975 in the Netherlands, certain events transpired which defendants contend cast doubt upon the propriety of this action continuing without the joinder of other persons as plaintiffs. First, on March 3, 1975, Frianco through its principal, Fritz Doets, purported to "cede" or assign the entire contract claim against Weinstein and Sterling to the Nederlandsche Middenstandsbank. Second, on March 20, 1975, Frianco and Doets were forced into involuntary bankruptcy. J. W. deZwaan was declared the trustee for the Doets estate, including Frianco. To complicate matters further, Tekke deVries and T. deVries, B.V. apparently assigned their interests in the breach of contract claim against defendants to the

---

3. Under the law of the Netherlands, "cession" appears to be similar to an assignment. Thus, to "cede" property is similar to assigning property under American law.

4. Tekke deVries has taken the position that the November 21, 1973, transaction was an assignment of the claim against the defendants to him personally, rather than to the corporation, T. deVries, B.V. However, this action has been brought by the corporation as plaintiff rather than Tekke deVries. Tekke deVries has explained that the reason for this apparent mis-

take was due to a typographical error. In any event, due to the recent agreement between Tekke deVries, T. deVries, B.V., G. J. Niezink and the Amsterdam-Rotterdam Bank, the question of whether the proper plaintiff is Tekke deVries the individual or T. deVries, B.V. has become moot, as the agreement ratifies the actions taken by plaintiff T. deVries, B.V. in this suit and authorizes the present action to continue in the name of T. deVries, B.V.

5. Weinstein waived its rights to proceed in arbitration and this suit was later instituted.

Amsterdam-Rotterdam Bank in October of 1975 and in March, 1976. Finally, in June of 1977, T. deVries, B.V. was declared bankrupt and G. J. Niezink was appointed trustee. Tekke deVries has personally not been declared bankrupt.

■ Rule 19, relating to the compulsory joinder of persons needed for a just adjudication, requires a federal court to apply federal law in determining first, whether it is necessary to have the absent person joined, and if so, whether the action can proceed in the person's absence. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In deciding Rule 19 questions, pragmatic considerations should be emphasized. *Gentry v. Smith,* 487 F.2d 571 (5th Cir. 1973). A number of interests have been identified as being relevant to Rule 19 controversies:

> First, the plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists. * * * Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. * * * Third, there is the interest of the outsider whom it would have been desirable to join. * * * Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968).

■ In the instant Rule 19 motion, the defendants rely on the general principle that where the validity of an assignment or the ownership of the claim purported to be assigned is in dispute, the assignor or others may be compelled to join in the action. *Syms v. Castleton Industries, Inc.,* 470 F.2d 1078 (5th Cir. 1972). *United States v. Barrett,* 315 F.Supp. 941, 946 (D.W.Va.1970); 7

Wright & Miller, *Federal Practice and Procedure:* Civil § 1613 at 130. The rationale of these decisions is primarily one of avoiding the potential for incurring multiple liability on the part of those already parties. Defendants, consistent with the foregoing, have asserted that the following absent persons are persons needed for a just adjudication within the meaning of Rule 19(a): Tekke deVries personally, G. J. Niezink (trustee of T. deVries, B.V.), the Amsterdam-Rotterdam Bank, Fritz Doets, J. W. deZwaan (trustee of Frianco), and the Nederlandsche Middenstandsbank.

· Specifically, defendants argue that Tekke deVries should be a party plaintiff in this proceeding as he has asserted in his deposition that the November 21, 1973, assignment was made to him personally and not to the corporation, T. deVries, B.V.[6] Similarly, defendants urge that due to the uncertainty regarding the issue of whether T. deVries, B.V., or Tekke deVries personally owns the claim against Weinstein, the trustee of the corporation, G. J. Niezink, should be joined as well. The defendants also contend that as the real owner of the claim against Weinstein may have been Tekke deVries or T. deVries, B.V., and as T. deVries, B.V. and Tekke deVries purported to assign their interest in the claim to the Amsterdam-Rotterdam Bank in October of 1975 and March of 1976, the Amsterdam-Rotterdam Bank may indeed own the claim against defendants and to proceed in the bank's absence would expose defendants to a substantial risk of incurring multiple obligations.

With respect to the remaining three absent persons alleged to be indispensable, the defendants assert that the November 21, 1973, transaction purporting to "cede" the claim against defendants to Tekke deVries is either invalid or became terminated under the law of the Netherlands and therefore either Doets, deZwaan or the Nederlandsche Middenstandsbank may be the owner of the claim. More specifically, the

---

**6.** Tekke deVries' explanation for this suit being brought under the corporate name is that a typographical error was committed.

defendants assert that under Dutch law, the November 21, 1973, transaction amounts to security for a debt under Dutch law, in which event the ownership of the claim reverted to Doets when Doets repaid the 50,000 guilder debt in 1974. If this is the case, they argue, then the Nederlandsche Middenstandsbank, by virtue of the assignment of the claim by Doets in 1975, is the probable owner of the claim. Alternatively, the defendants argue that the November 21, 1973, transaction constituted an assignment for collection purposes which was revoked under operation of Dutch law upon a further assignment by Doets to the Nederlandsche Middenstandsbank. Furthermore, defendants contend that this transaction could be interpreted as an attempted sale of the claim for forty percent of the proceeds, and consequently under Dutch law title to the claim never passed to deVries because there was no obligation imposed upon deVries to use his best efforts for collection. Consistent with the foregoing, the defendants conclude that the Nederlandsche Middenstandsbank is the probable present owner of the breach of contract claim against Weinstein. Thus, defendants conclude that to proceed in the absence of these Netherlands citizens would expose them to a significant potential of incurring multiple obligations and therefore, as these absent persons are not subject to service of process, the entire action should be dismissed.

The plaintiff has responded with a series of arguments. First, under Dutch law, plaintiff argues that the November 21, 1973, transaction is valid as the underlying purpose of the transaction is irrelevant for purposes of title passing to the assignee and that subsequent assignments by the original assignor are invalid.[7] Plaintiff also submits that in any event, the four-year statute of limitations provision of section 2–725[8] of the Uniform Commercial Code would be recognized by the courts of Holland and consequently all the absent persons are barred as more than four years has expired since the original Frianco-Weinstein contract was breached. Furthermore, plaintiff argues that with respect to Tekke deVries, G. J. Niezink and the Amsterdam-Rotterdam Bank, there is little possibility that defendants could incur multiple liability because these three absentees have entered a ratification agreement with T. deVries, B.V., the present plaintiff. In this agreement,[9] Tekke deVries, G. J. Niezink and the Amsterdam-Rotterdam Bank authorize T. deVries, B.V. to continue as plaintiff in the present action. The agreement further provides that Tekke deVries, Niezink and T. deVries, B.V. assign whatever interest they own in the claim against Weinstein and Sterling to the Amsterdam-Rotterdam Bank and provides that in the event of a recovery, the proceeds are payable to the Amsterdam-Rotterdam Bank.

7. Plaintiff and defendants have both submitted affidavits expounding on the Dutch law of assignments. Mr. Van Vliet and Mr. Verloop, the affiants of the respective parties, have taken positions on the Dutch law of cession which can only be characterized as polarized. The central disagreement over the November 21, 1973, transaction concerns whether under Dutch law the particular purpose of the assignment controls as to whether title to the thing assigned passes to the assignee. This appears to be a fundamental matter, and this Court does not intend to decide particular issues of Dutch law on this motion. It is sufficient to note for purposes of this motion that the existence of these disagreements over the Dutch law of assignments has particular relevance to, and detracts from, defendants' claim that it will be exposed to a significant risk of multiple liability in the future if these absent persons are not joined in this action.

8. Section 2–725(1) of the Uniform Commercial Code provides:

An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

9. The pertinent part of the English translation of this agreement provides as follows:

1. deVries, B.V., deVries and Niezink assign any interest which they may have in this lawsuit, or any claim which they may have against Weinstein International Corp., Weinstein International DISC Corporation or Sterling Colorado Beef Company to AMRO Bank.

2. All parties hereto approve assent to and ratify the continuation of deVries, B.V. as plaintiff in this lawsuit and agree to be bound by the final determination made in this lawsuit.

■ This Court initially must determine whether any of the six absent persons alleged to be indispensable are persons to be joined if feasible under Rule 19(a), which provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

It does not appear, nor do defendants argue, that in the absence of the six persons complete relief cannot be accorded between plaintiff and defendants. *Virginia Electric and Power Company v. Bunker Ramo Corporation,* 61 F.R.D. 366 (E.D.Va.1973). Consequently, as complete relief can be granted in this action to plaintiff and defendants, Rule 19(a)(1) is inapplicable.

■ Rule 19(a)(2) applies when an absent person "claims an interest in the subject matter of the action . . . ." *Id.* at 368. Rule 19(a)(2) provides that when an absentee claims such an interest and because of his absence either impairs his ability to protect his interest or leaves the parties to the pending suit subject to a substantial risk of incurring multiple or inconsistent obligations because of the absent person's claimed interest, the absentee is a person to be joined if feasible under the rule. Even

assuming that any of the six absentees have properly claimed an interest in the breach of contract claim against defendants, the provisions of Rule 19(a)(2)(i) are simply not controlling as the continuation of this action does not impair the ability of the absentees to protect whatever interests they might possess. First of all, these persons, not being parties, are not bound by this litigation. More importantly, as will be discussed later, the continuation of this proceeding may be the only way any of the absent persons can preserve their interests. It therefore follows that the continuation of this action does not impair but might provide the most viable alternative for the absentees to protect their interests.

Thus, the central issue here under Rule 19(a)(2)(ii) is whether any of the six absent persons alleged to be "indispensable" are persons who have claimed an interest in the breach of contract claim against Weinstein and Sterling and because of their absence expose the present defendants to a "substantial risk" of incurring multiple liability in the future. This Court has concluded that the six absentees are not persons to be joined if feasible within the meaning of Rule 19(a), as some of the absentees have not "claimed" an interest in the subject matter of the action and because none of them present the requisite "substantial" risk of exposing defendants to multiple or inconsistent obligations.

■ With respect to defendants' allegations regarding Tekke deVries, G. J. Niezink, and the Amsterdam-Rotterdam Bank, the agreement between these three absentees and T. deVries, B.V., vitiates any joinder problem. The agreement essentially ratifies the actions undertaken by T. deVries, B.V. as the party plaintiff and authorizes the present plaintiff to continue the prosecution of this action. It further provides that the parties to the agreement assign whatever interests they possess in the claim against Weinstein and Sterling to the Amsterdam-Rotterdam Bank. Moreover, the parties to the agreement have all agreed "to be bound by the final determina-

tion in this lawsuit." An agreement which ratifies the commencement and continuation of an action or reassigns the respective interests is normally sufficient under Rule 17 to cure any real party in interest defects. *Clarkson Co. Ltd. v. Rockwell International Corp.*, 441 F.Supp. 792 (N.D.Cal.1977); *National American Corp. v. Federal Republic of Nigeria*, 420 F.Supp. 954 (S.D.N.Y.1976); *Honey v. George Hyman Construction Co.*, 63 F.R.D. 443 (D.D.C.1974); *Southern National Bank of Houston, Texas v. TRI Financial Corp.*, 317 F.Supp. 1173 (S.D.Tex. 1970). As the central purpose of Rule 17 is to insure that a defendant is protected against the potential for multiple liability, the agreement is of obvious relevance here. This agreement effectively obviates any risk that defendants will be subjected to multiple liability in the future from Tekke deVries, G. J. Niezink or the Amsterdam-Rotterdam Bank (the parties to the agreement), as they have agreed to be bound by the result in this litigation. *Southern National Bank of Houston, Texas v. TRI Financial Corp.*, 317 F.Supp. 1173 (S.D.Tex. 1970). It also makes clear that Tekke deVries and Niezink have not claimed an interest in the claim against the defendants as they have assigned their interests in the claim to the Amsterdam-Rotterdam Bank. For these reasons, Tekke deVries, the Amsterdam-Rotterdam Bank and G. J. Niezink cannot be characterized as persons to be joined if feasible within the meaning of Rule 19(a).

█ Fritz Doets, acting on behalf of Frianco, purported to assign his interest in the claim against the defendants two times—first to Tekke deVries and then to the Nederlandsche Middenstandsbank. By virtue of these multiple assignments, it is unlikely that Doets or deZwaan is the present owner of the claim against the defendants. Rule 19 requires that in order for an absentee to be a person to be joined if feasible, the absent person must have a claimed or apparent interest in the ownership of the subject matter of the action. *Walton v. United States*, 415 F.2d 121 (10th Cir. 1969). Neither Doets nor deZwaan have indicated their intention to pursue litigation against the defendants. Other than an expressed interest in obtaining the 40% share of the proceeds in the event of a recovery by Tekke deVries, Doets has shown no interest in pursuing a remedy from defendants. As Doets or deZwaan do not appear to have an ownership interest in the claim against defendants and as they have manifested no intention to pursue a remedy, it follows that Doets or deZwaan have not "claimed" an interest in the subject matter of the action within the meaning of Rule 19(a). Moreover, even assuming that Doets or deZwaan have properly "claimed" an interest under Rule 19(a), it appears that a viable statute of limitations defense could be asserted against Doets and deZwaan, as with all the absent persons, if they were to bring a separate action against defendants. For all these reasons, it necessarily follows that Doets or deZwaan do not present a substantial risk of imposing multiple liability on the defendants in the future.

According to the defendants' view of Dutch law, if the November 21, 1973, assignment from Doets to deVries is invalid or if initially valid became terminated in 1975, then the Nederlandsche Middenstandsbank is the probable present owner of the claim against the defendants. It appears from correspondence in the record that the Nederlandsche Middenstandsbank considers itself to be the owner of the claim against the defendants by virtue of the March 3, 1975, purported assignment from Fritz Doets. However, the bank has not filed an action to enforce the claim.

The defendants' conclusion that the Nederlandsche Middenstandsbank is the probable owner of the claim against defendants presupposes either that the November 21, 1973, transaction was invalid under Dutch law or while valid originally, was effectively terminated by operation of law by the 1975 assignment to the Nederlandsche Middenstandsbank because the November 21, 1973, transaction constituted an assignment for collection under Dutch law. As previously noted, the plaintiff disputes these interpretations of Dutch law and urges that

the November 21, 1973, assignment was valid. Plaintiff also argues that under the bankruptcy law of the Netherlands, the purported assignment by Doets to the Nederlandsche Middenstandsbank was ineffective as a voidable preference. Plaintiff's and defendants' experts are apparently both in agreement that the courts of Holland would apply the four-year statute of limitations provision of UCC 2–725 as required by the contract between Weinstein and Frianco. The alleged breach of the Weinstein-Frianco contract occurred in 1973 and none of the absent persons have commenced an action in the Netherlands or elsewhere. It also appears that the defendants concede that the statute of limitations defense may indeed be a viable one.[10] However, defendants argue that a plausible interpretation of Dutch law would allow the Nederlandsche Middenstandsbank to escape the effect of the statute of limitations. They reason that if Doets could validly make a second assignment, if the November 21, 1973, transaction constituted an assignment for collection purposes, if under Dutch law the commencement of arbitration by the initial assignee tolls the statute insofar as a subsequent assignee (the Nederlandsche Middenstandsbank) is concerned, and if under Dutch law the subsequent assignee then stands in the position of the prior assignee, the Nederlandsche Middenstandsbank can avoid the statute of limitations defense. This argument is premised not only upon an entire series of assumptions but on an unresolved and undoubtedly disputed question of Dutch law—whether the commencement of arbitration proceedings tolls the statute of limitations and if so whether a subsequent assignee to an initial assignee of an assignment for collection purposes can benefit from the initial assignee's actions in commencing arbitration.

Rule 19(a) requires that the risk of a party being subject to the imposition of multiple or inconsistent obligations be a substantial one. In determining the substantiality of the risk, this Court is obligated to assess the likelihood of absent persons bringing suit and prevailing on the merits against the present defendants. *Morgan Guaranty Trust Company v. Martin*, 466 F.2d 593 (7th Cir. 1972); *Dunlop v. Beloit College*, 411 F.Supp. 398 (W.D.Wis.1976); *Virginia Electric & Power Company v. Bunker Ramo Corp.*, 61 F.R.D. 366 (E.D.Va. 1973). Under the circumstances, it does not appear that the Nederlandsche Middenstandsbank possesses significant potential to prevail on the merits against defendants in a separate action. First, it appears that the November 21, 1973, transaction may indeed be a valid non-revocable assignment under Dutch law. Second, under the bankruptcy law of the Netherlands, any assignments (such as the one to the Nederlandsche Middenstandsbank) by Doets may be ineffectual. Finally, the statute of limitations defense may be a viable one. While this Court does not intend to definitively resolve questions or foreclose arguments as to the applicable Dutch law in this case,[11] the potential meritorious defenses available under Dutch law make the chance of success of a separate action by the Nederlandsche Middenstandsbank too remote. Consequently, the defendants cannot be said to face a substantial risk of incurring multiple or inconsistent obligations from the Nederlandsche Middenstandsbank, and the bank cannot therefore be regarded as a person to be joined if feasible under Rule 19(a). *Morgan Guaranty Trust Company v. Martin*, 466 F.2d 593 (7th Cir. 1972).

As this Court has determined that the six absent persons are not persons to be joined if feasible, an extended analysis under Rule 19(b) is unnecessary. *Internation-*

---

**10.** Mr. Verloop, defendants' expert on the law of the Netherlands, states in one of his affidavits that if the Dutch courts would not regard the commencement of arbitration proceedings by a prior assignee as being sufficient to toll the statute of limitations for a subsequent assignee (referring to the Nederlandsche Middenstandsbank), "it must be considered a serious

possibility that no action against Weinstein exists at this time."

**11.** The resolution of this motion does not amount to nor is it intended to be a partial summary judgment on Dutch law issues as contended by defendant Weinstein.

al *Union of Operating Engineers, Local 103, AFL–CIO v. Irmscher & Sons, Inc.,* 63 F.R.D. 394 (N.D.Ind.1973). However, even assuming that any of the six absentees are persons to be joined if feasible, it does not follow that dismissal is warranted. Under Rule 19(b), the Court is to balance equitable considerations to determine if the action in fairness can proceed without the joinder of the absent person. The rule provides as follows:

> (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In the instant proceeding, the pertinent factors militate against dismissal. The original Weinstein-Frianco contract required that in the event of a dispute the matter was to be settled by arbitration in Minnesota. The plaintiff complied with this provision. If this Court were to dismiss the action, plaintiff and the absent persons would undoubtedly encounter a statute of limitations defense in an action brought in the Netherlands. Moreover, it is unclear whether defendant Sterling is subject to the jurisdiction of the courts of Holland. In short, dismissal would very likely leave plaintiff and the absent persons without any remedy whatsoever. By allowing this action to continue, the absent persons have the option of intervening in this action under Rule 24. This course is certainly preferable to outright dismissal. Under the circumstances, this Court finds that even if any of the six absent persons are persons to be joined if feasible, the factors relevant under Rule 19(b) make dismissal of this action inappropriate.

For the reasons outlined above, IT IS ORDERED that defendants' motion to dismiss under Rule 12(b)(7) be denied.