**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OWENS-ILLINOIS, INCORPORATED,
Petitioner-Appellant,

v.

DAVID L. MEADE; JERRY H. ADAMS;
CHARLES ADKINS; GENEVA ADKINS;
STANLEY ALLEN; MARGARET ALLEN;
DERETTA ANDERSON; JOHN ANTOBIUS;
JOSEPHINE ARNETT; JAMES ASHCRAFT;
MARY ASHCRAFT; MARY AYERSMAN;
ELIZABETH AYOOB; HERBERT BAKER;
SUE BAKER; PAUL BASTIN; KATHLEEN
BASTIN; ALFRED BECCALONI;
FLORENCE BEEGHLEY; LOREN SMITH;
BENNIE BENNETT; WILLIAM BENNETT;
JOY BENNETT; JUNIOR BILLER;
MARGARET BILLER; ZORA BOGDAN;

ALBERT BOOTHE; MILDRED BOOTHE;
MINNIE BOSLEY; ALICE BOYCE; LESLIE
BOYCE; JOHN BRADSHAW; VIRGINIA
BRADSHAW; JOHN BRAMER; FREEDA
BRAMER; EARL BRITTON; MARY
BRITTON; ROY CALDWELL; JUNE
CALDWELL; PAUL CANTERBURY; TONI
CANTERBURY; SAMUEL CAPET; ROBERT
CARPENTER; VIRGINIA CARPENTER;
DOLORES CHIERA; JAMES CHIERA;
RUTH CLARK; LEO CLEVENGER;
CLACY CLEVENGER; DOROTHY COGAR;
MARY COULTER; LANTY COULTER;
MILDRED COX; ROBERT COX;
EARNEST CROSS; GEORGE CROSS;
ATHELLA CROSS; SAMUEL CUTRONE;

No. 98-2218

RUTH CUTRONE; ELLA DAVIS; OSCAR DAVIS; FRANCIS DEAN; LOUISE DEAN; GLENN DEAN; IDA DEAN; THEODORE DEPOLO; THEDA DEPOLO; AGNES DEROSA; LOUIS DEROSA; JULIE DIAZ; JAMES DINGESS; SONIA DINGESS; LEWIS DOSIER; MARY DOSIER; HELEN DOSS; FELIX DRAZBA; NOVELLA DRAZBA; KENNETH DURST; LORETTA DURST; ALBERTA EDGELL; WILLIAM EDGELL; CECIL ELDER; ALMA ELDER; JOHN EMRICK; BEVERLY EMRICK; JOANNE ERDEN; RUTH FAZIO; JAMES FISHER; PATRICIA FISHER; FREDERICK FLEMING; LOIS FLEMING; CLYDEAN FLOHR; GEORGE FLOHR; JAMES FLOYD; BETTIE FLOYD; CARL FREDERICK; CLEO FREDERICK; CHARLES FREEMAN; MARY FREEMAN; EULES FREEMAN; EMOGENE FREEMAN; ALPHONSE GENIN; HELEN GENIN; MADELINE GOOCH; MELVIN GOOCH; CHARLES GOODNIGHT; CARMELA GRAY; JAMES GRAY; DAVID GRIFFITH; GLORDIA GRINDO; DANNA HARRIS; FRANCIS HARRIS; FLORENCE HARRIS; AUBREY HARRIS; JIMMIE HICKMAN; MARY HICKMAN; EDNA HICKS; SHIRLEY HILEMAN; WILLIAM HINTER; MARY HINTER; ROGER HOLMES; SARA HOLMES; KENNETH HURST; BETTY HURST; CAROLE MARTIN HUTSON; RAYMOND INSANI; HAROLD JOHNS; MARY JOHNS; GARLAND JOHNSTON; BLANCHE JOHNSTON; HELEN JONES; SAMUEL KELLY; HELEN KELLY;

2

ELIZABETH KENDRICK; JOHN KENDRICK; DELBERT KINCAID; PAULINE KINCAID; HAROLD KNIGHT; GEORGE KOPSHINA; FRANCES KOPSHINA; MARLEY LANDES; VOLA LANDES; THOMAS LANGFORD; LOIS LANGFORD; CASEY LASKO; JOSEPHINE LASKO; ESTHER LEESON; SAM LEROY; BARBARA LEROY; KENNETH LOWTHER; PATRICIA LOWTHER; PETE MALE; JOE MANCUSO; VIRGINIA MANCUSO; LOWELL MANGUS; KATHLEEN MANGUS; MARLO MANZO; EUDIZIA MANZO; MARY MARSH; BERNARD MARSHALL; SAM MAZZA; MARY MCELWAIN; ROBERT MCELWAIN; CHARLES MEALEY; ETHEL MICHNA; ADAM MICHNA; DANNY MICKLICH; JUDITH MIKLICH; JAMES MOONEY, JR.; BONNIE MORGAN; KAREN MORRIS; PATRICK MORRIS; VINCENT NASH; FRANCIS NASH; MELVIN NORMAN; CONSTANCE NORMAN; LOUISE NUTTER; GOFF NUTTER; BRANTY PETTIGREW; ELIZABETH PETTIGREW; DONALD PLIVELICH; TED POE; DIANE POE; HARRY POPP; ALVENA POPP; JOHN RIDENOUR; BEATRICE RIDENOUR; PAUL ROBERTS; KATHLEEN ROBERTS; JAMES ROMINE; BERNICE ROMINE; CONRAD ROSS; DOMINICK SALENTRO; MARGARET SALENTRO; WILSIE SANDY; WILLIAM SANDY; RANCE SEABOLT; MELVA SEABOLT; JAMES SECCURO; FRANK SECRETO; MARY SECRETO;

LYALL SINE; SARAH SINE; HERSHEL SISSON; JOSEPHINE SISSON; JACKIE SKINNER; DORIS SKINNER; LILLIE SLOBADZIAN; ANDREW SLOBADZIAN; BERNADINE SNIDER; GENE SOMERS; ALICE SOMERS; JACK STANLEY; JANICE STANLEY; HAROLD STOCKING; VELMA STOCKING; DRAPER STRADER; KAY STRADER; ROBERT SWAIN; ADDISON SWISHER; BETTY SWISHER; ANTHONY TALERICO; LUCY TALERICO; WILLARD TALLMAN; YVONNA TALLMAN; CLEDITH TAYLOR; CAROL TAYLOR; DALLAS TAYLOR; MABEL TAYLOR; BEVERLY TENDA; CARL TENDA; CHESTER THARP; CAROL THARP; WILLIAM THAXTON; BETTY THAXTON; JAMES TORMAN; GALENA TORMAN; HARRIET TRENT; SOPHIA TROVATO; CHARLES TROVATO; BETTY TUTTLE; OLIVE UTT; WILLIAM UTT; EARL VANCE; KATHERINE VANCE; HARRY VANDERGRIFT; THOMAS VELTRI; MARY JANE VELTRI; ARNOLD VINCENT; GRACE VINCENT; DENTON VINCENT; CAROLYN VINCENT; ROGER WADE; VIRGINIA WADE; RALLY WALTERS; ANNETTA WALTERS; ELOISE WARE; HENRY WEIMER; BETTY WEIMER; JAMES WILCOXEN; HELEN WILCOXEN; BEATRICE WILLIAMS; CHARLES WILLIAMS; JAMES WILLIAMSON; MARY WILLIAMSON; MELVIN WILLIAMSON; ELIZABETH WILSON; DONALD WILSON; JACK WILSON; SARAH WILSON;

HARVEY WOLFE, GWENDOLYN WOLFE;
MARTHA WRIGHT; HAROLD WRIGHT;
GEORGIA YOHO; ORIE YOUNG;
FRANCIS ZEBLEY,
Respondents-Appellees.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Elizabeth V. Hallanan, Senior District Judge.
(CA-98-533-2)

Argued: March 2, 1999

Decided: August 2, 1999

Before ERVIN, Circuit Judge,
VOORHEES, United States District Judge for the
Western District of North Carolina, sitting by designation,
and FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Voorhees and Judge Faber joined.

_____

**COUNSEL**

**ARGUED:** William Clifford Wood, Jr., Robert Bruce Shaw, NEL-
SON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia,
South Carolina, for Appellant. Elliott William Harvit, HARVIT &
SCHWARTZ, L.C., Charleston, West Virginia, for Appellees. **ON
BRIEF:** Robert O. Meriwether, NELSON, MULLINS, RILEY &
SCARBOROUGH, L.L.P., Columbia, South Carolina; David K. Hen-
drickson, Peter B. King, HENDRICKSON & LONG, P.L.L.C.,
Charleston, West Virginia, for Appellant.

5

**OPINION**

ERVIN, Circuit Judge:

Owens-Illinois, Inc. ("Owens-Illinois") appeals a district court ruling dismissing its Petition to Compel Arbitration and two related motions for lack of jurisdiction because the parties to the motion were not completely diverse. Owens-Illinois argues that, even if the parties to the other motions filed simultaneously were not diverse, the district court erred in dismissing the Petition to Compel Arbitration in which the named parties were diverse. Because we conclude that the parties excluded from the Petition to Compel were necessary and indispensable parties under Fed. R. Civ. P. 19 and, because their joinder destroys diversity, the district court lacked jurisdiction over this case. We affirm.

I.

Owens-Illinois is a manufacturing corporation incorporated in Delaware with its principal place of business in Ohio.

On or about January 21, 1993, Owens-Illinois entered into a Settlement Agreement ("the Agreement") with West Virginia attorneys David L. Meade ("Meade"), William C. Field, and Joseph F. Rice. The Agreement specified the terms and process by which the attorneys' many clients ("Plaintiffs") would settle future asbestos tort cases they had against Owens-Illinois. The Agreement provided that Plaintiffs who had been exposed to asbestos contained in products manufactured by Owens-Illinois, and who had developed an asbestos related disease, could submit certain medical and exposure information and receive an expeditious, extra-judicial settlement offer from Owens-Illinois. Meade terminated the Agreement in June 1997, when, in his opinion, Owens-Illinois failed to comply with its obligations under the Agreement.

Following the termination of the Agreement, several Plaintiffs injured by Owens-Illinois' asbestos-related products filed tort actions in the Circuit Court of Kanawha County, West Virginia to recover for their injuries. The case filed in West Virginia state court is known as

6

Haddix v. Owens-Illinois, Inc. et. al., C/A No. 91-C-2273, and includes Plaintiffs that were residents of both West Virginia and Ohio.

In an effort to block the Plaintiffs from pursuing their claims in state court, Owens-Illinois filed a Petition to Compel Arbitration in the United States District Court for the Southern District of West Virginia seeking enforcement of the Agreement's arbitration provisions. The petition contained the same caption as in the Haddix case pending before the state court naming "David L. Meade, Respondent Plaintiffs" as parties. In the first paragraph of the petition, however, Owens-Illinois explicitly stated that the parties for the purpose of the Petition to Compel were only those named in the attached list entitled Exhibit A. Exhibit A contained the names of a sub-group of the Haddix Plaintiffs consisting of only those that were residents of West Virginia, specifically excluding all Plaintiffs from Ohio.

At the same time, Owens-Illinois also filed a Motion for a Temporary Restraining Order (TRO) and a Motion to Stay the state court proceedings. Both of the motions included the same caption as the Petition to Compel Arbitration, but neither contained a textual reference to Exhibit A or any indication that the parties were limited to only the Plaintiffs from West Virginia. Instead, Owens-Illinois referred loosely to enjoining the "Respondent Plaintiffs," defined as all of the people involved in the Haddix state court action.

On June 17, 1998, the district court held a hearing on Owens-Illinois' Motion for a TRO. The court held that, because Owens-Illinois was trying to enjoin each and every Haddix plaintiff from proceeding in state court, and some of these Plaintiffs shared citizenship with Owens-Illinois, complete diversity was lacking. The following day the district court entered an order dismissing all three of Owens-Illinois' motions for lack of subject matter jurisdiction.

Owens-Illinois filed a Motion for Reconsideration on June 30, 1998, arguing that the district court erred in dismissing the Petition to Compel Arbitration because the "Respondent Plaintiffs" listed in the Motion for a TRO and the Motion to Stay were not the same parties as those explicitly listed in Exhibit A of the Petition to Compel Arbitration. The district court denied the motion reasoning that,

7

because the three motions were filed at the same time and were intended to act in concert with one another to halt the state court action, the parties in all three motions were the same. Therefore, because some of the parties to the state court action included Ohio residents, diversity was not complete and subject matter jurisdiction was lacking. Further, even if the parties to the Petition to Compel were distinct from those in the other two motions, the district court concluded that the non-diverse, Ohio Plaintiffs were necessary and indispensable parties under Fed. R. Civ. P. 19 and, because their joinder would destroy diversity, the case should be dismissed for want of jurisdiction. Owens-Illinois appeals the district court's ruling.

II.

"The district court's order dismissing a case on the grounds of lack of subject matter jurisdiction is a legal determination subject to de novo review." Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1034 (4th Cir. 1994).

Owens-Illinois' cause of action arises out of the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16 (West 1999). Section 4 of the FAA confers jurisdiction in the district court over petitions to compel arbitration only to the extent that the federal court would otherwise have jurisdiction over the case.[1] On that basis, this case must include another independent basis to establish federal jurisdiction. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983).

The parties agree that the only possible independent basis of fed-

_____

[1] Section 4 of the FAA provides in pertinent part:

> A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4.

8

eral subject matter jurisdiction here is diversity of citizenship. See 28 U.S.C.A. § 1332 (West 1993 & Supp. 1999). In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship with any of the defendants. See Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990).

Owens-Illinois argues that, even if the other two motions named non-diverse, Ohio Plaintiffs, diversity of citizenship existed with respect to the Petition to Compel because it explicitly included only those Plaintiffs who were diverse from Owens-Illinois. In its ruling, the district court relied on the fact that the three motions were filed at the same time and were intended to act in concert with one another to halt the Plaintiffs' suits in state court to find that the parties were the same for all three motions. In the alternative the district court concluded that, because the Plaintiffs were highly likely to be prejudiced by the piecemeal nature of this litigation, they were necessary and indispensable parties pursuant to Rule 19 and should have been joined.

We do not agree with the district court's conclusion that, because the three motions were filed at the same time and were intended to act in concert, the parties for all three motions were the same non-diverse parties over which it lacked jurisdiction. However, because we agree that the non-diverse, Ohio Plaintiffs excluded from the Petition to Compel are necessary and indispensable parties to this action and should have been joined, we affirm the district court's dismissal of the case for want of subject matter jurisdiction.

Rule 19 sets out separate tests for determining whether a party is "necessary" and "indispensable." It is a two-step inquiry in which courts must first ask "whether a party is necessary to a proceeding because of its relationship to the matter under consideration" pursuant to Rule 19(a).**2** Teamsters Local Union No. 171 v. Keal Driveaway

_____

**2** Rule 19(a) provides, in pertinent part:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence com-

9

<u>Co.</u>, 173 F.3d 915 (4th Cir. 1999), No. 98-1292, 1999 WL 170194, at *2 (Mar. 29, 1999). If a party is necessary, it will be ordered into the action. When a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b)**3** and the action must be dismissed. <u>See id.</u>

Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result. <u>See RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.</u>, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995) (relying on <u>Provident Tradesmans Bank & Trust Co. v. Patterson</u>, 390 U.S. 102, 118 (1968)). Such a decision "must

_____

plete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

**3** Rule 19(b) provides:

<u>(b) Determination by Court Whenever Joinder not Feasible.</u> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

10

be made pragmatically, in the context of the substance of each case, rather than by procedural formula," Patterson , 390 U.S. at 119 n. 16, by considering "the practical potential for prejudice" to all parties, including those not before it. Schlumberger Indus., Inc. v. National Sur. Corp., 36 F.3d 1274, 1286 (4th Cir. 1994).

In the instant case, the district court properly found that the non-diverse, Ohio Plaintiffs in the Haddix action were necessary and indispensable parties whose absence requires dismissal.

A.

The non-diverse Plaintiffs are necessary parties to this action because permitting this suit to continue in both the state and federal courts would likely subject all of the parties to conflicting legal obligations in a manner prohibited by Rule 19(a)(2)(ii). As the district court noted, in the instant case both courts are being asked to make determinations on the validity and interpretation of the Agreement, creating a high likelihood of incongruous results. In previous cases we have ruled that the increased potential for inconsistent judgments is grounds for finding a nonjoinded party necessary. See Keal Driveaway Co., 173 F.3d 915, ___ (4th Cir. 1999), 1999 WL 170194, at *3 (continuing without the necessary party is impermissible because permitting the suit to proceed without unjoined parties could subject a joined party to conflicting legal obligations); Schlumberger, 36 F.3d at 1286-87 (holding that the potential for factual and legal "whip-saw" favored finding that the unjoined party was necessary). See also Window Glass Cutters League of America, AFL-CIO v. American St. Gobain Corp., 428 F.2d 353, 354-55 (3d Cir. 1970) (concluding that the potential for inconsistent judgments made two disputing unions necessary parties).

We agree with the district court that this case creates a high potential for inconsistent judgments. If this action was allowed to proceed one court might compel arbitration on the basis of the Agreement, while the other found that, because Owens-Illinois breached the Agreement, alternative judicial remedies were available to some of the Plaintiffs. This potential for factual and legal "whip-saw" weighs heavily in favor of having one court adjudicate the entire case with all of the affected parties before it. See Schlumberger, 36 F.3d at

11

1287. In fairness to all of the parties involved in this matter, we hold that the non-diverse, Ohio Plaintiffs excluded from the Petition to Compel are necessary parties.

B.

Having concluded that the non-diverse Plaintiffs are necessary, and because their joinder would destroy diversity, we must determine whether they are indispensable using the factors enumerated in Rule 19(b). Consideration of the first and third factors under the rule -- the extent to which a judgment rendered in the person's absence might prejudice the parties or would even be adequate-- address much the same concerns as under the Rule 19(a)(2) analysis. See 7 Wright, Miller & Kane, Federal Practice and Procedure§ 1604, at 47 (2d ed. 1986) (noting that the Rule 19(a) analysis is "closely related to several of the factors mentioned in Rule 19(b)"). As previously discussed, the high potential for factual and legal whipsawing indicates that the parties will be prejudiced by any judgment rendered in the absence of the non-diverse Plaintiffs and, therefore, such a resolution would not be adequate.

As to the second factor, it is hard to see how the district court could have tailored a remedy to lessen or avoid the potential for prejudice in this case. In order to reach a judgment on the merits of the Petition to Compel Arbitration, the district court could not have avoided addressing the validity and applicability of the Agreement's arbitration provision, thereby ruling on the same issues before the West Virginia state court. Without another plausible remedy, the district court could not have fashioned a remedy that would avoid the inevitable prejudice to the parties to the duplicative litigation.

Finally, with respect to the fourth factor, we see no reason why the Circuit Court of Kanawha County, West Virginia will not provide an adequate remedy for the parties in this case. In fact, it is likely the best place for the adjudication of this matter since all of the Plaintiffs work at the same location and will share many witnesses and exhibits in the event a trial is held. The West Virginia state court is more than capable of rendering an adequate and fair judgment in this matter. With all four factors supporting a finding of indispensability, this

12

Court could not in good conscience allow this case to proceed in the absence of the non-diverse, Ohio Plaintiffs.

III.

Having found that the non-diverse Plaintiffs to the Haddix action are necessary and indispensable parties to the Petition to Compel Arbitration, we hold that their joinder is mandated under Rule 19. Their joinder, however, destroys complete diversity, the only basis on which the district court maintained subject matter jurisdiction.**4** Without jurisdiction, this claim must be dismissed. The decision of the district court is therefore

AFFIRMED.

_____
**4** On motion to this Court and at oral argument, Meade and the Haddix Plaintiffs argued that oral rulings made in two hearings before the Circuit Court of Kanawha County, West Virginia rendered this case moot. However, questions of subject matter jurisdiction must be decided "first, because they concern the court's very power to hear the case." 2 James Wm. Moore et al., Moore's Federal Practice§ 12.30[1] (3d ed. 1998). Our dismissal of this case for lack of jurisdiction, therefore, makes it unnecessary for us to decide this issue.